AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)     ☐ Original   ☐ Duplicate Original

| LODGED<br>CLERK, U.S. DISTRICT COURT<br>6/26/2025<br>CENTRAL DISTRICT OF CALIFORNIA<br>BY: ____MMC____ DEPUTY |
|---|

# UNITED STATES DISTRICT COURT
for the
Central District of California



FILED
CLERK, U.S. DISTRICT COURT
6/26/25
CENTRAL DISTRICT OF CALIFORNIA
BY: ____MR____ DEPUTY

| United States of America | ) |
| v. | ) |
| ERIC ANTHONY RODRIGUEZ, | ) Case No. 2:25-MJ-03949-DUTY |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of June 21, 2025, in the county of Los Angeles, in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(d) | Possession of an Unregistered Destructive Device |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Michael A. Montevidoni
*Complainant's signature*

Michael A. Montevidoni, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 26, 2025

*Judge's signature*

City and state: Los Angeles, California

Hon. Pedro V. Castillo, U.S. Magistrate Judge
*Printed name and title*

AUSA: Jenna W. Long (213-894-8692)

**AFFIDAVIT**

I, Michael A. Montevidoni, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and have been so employed since July 2015. I am currently assigned to the Los Angeles Field Division and in the Certified Explosives Specialist program.

2. I completed the 12-week Criminal Investigator Training Program and the 12-week Special Agent Basic Training at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. I also received specialized training while attending the academies at FLETC concerning violations of the Gun Control Act within Title 18 of the United States Code and violations of the National Firearms Act within Title 26 of the United States Code. That specialized training covered topics such as surveillance, interviewing, warrant writing, evidence handling, arrest procedures, search procedures, and testifying in court.

3. In addition to general law enforcement training including on criminal statutes, I have received specialized training in conducting criminal and explosive and destructive device investigations, amongst other specialized weapons training, and have consulted with my colleagues who have many years of experience investigating weapon related crimes. Within ATF's Certified Explosives Specialist Program, I have completed courses through ATF's National Center for Explosives Training in

1

Huntsville, Alabama which include Certified Explosives Specialist Basic Training, Advanced Disposal Techniques, Post-Blast Investigations and Homemade Explosives.

4. During my employment with ATF, I have participated in several investigations involving individuals using explosive or incendiary devices. These investigations have included a variety of investigative techniques, including interviews, obtaining information from other law enforcement agencies, court-authorized searches of physical locations, as well as electronic devices and data retrieved from them, and the interception of wire and electronic communications, examining and preserving physical evidence, conducting surveillance, and reviewing financial, telephone, and other third-party records.

## II. **PURPOSE OF AFFIDAVIT**

5. This affidavit is made in support of a criminal complaint against, and arrest warrant for, Eric Anthony Rodriguez ("RODRIGUEZ") for a violation of 26 U.S.C. § 5861(d) (Possession of an Unregistered Destructive Device).

6. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only, all amounts

or sums are approximate, and all dates and times are on or about those indicated.

### III.  LEGAL BACKGROUND

7.  Title 26, United States Code, Section 5861(d) provides that "[i]t shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record."  Title 26, United States Code, Section 5871 further provides that "[a]ny person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both."

8.  Destructive devices are considered firearms under Title 26, United States Code, Section 5845(a)(8).

9.  Under Title 26, United States Code, Section 5845(f), "[t]he term 'destructive device' means . . . (1) any explosive, incendiary . . . bomb . . . or similar device . . . and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraph[] (1)."

10.  Based on my training and experience, I know that to constitute a functioning incendiary device, the device must (1) be a breakable container, (2) contain a flammable substance, and (3) include a source of ignition.

11.  Based upon my training and experience, I am familiar with devices commonly known as "Molotov cocktails," which are incendiary devices.  Molotov cocktails typically consist of a bottle or some type of container which can hold an ignitable

fluid or liquid.  Once such a bottle or container is filled with an ignitable fluid or liquid, a cloth-type material is usually packed as a wick in the opening of the bottle or container. When the wick is ignited, the ignitable fluid or liquid within the container frequently ignites as well.  Often, the container is broken after it is thrown or dropped, which causes the ignitable liquid inside to disperse and causes a fire to spread.

### IV. SUMMARY OF PROBABLE CAUSE

12. On June 21, 2025, at approximately 3:50 a.m., an individual, later identified as RODRIGUEZ, approached a hotel in Los Angeles, California where federal agents had been staying during immigration enforcement actions.  RODRIGUEZ then lit and threw a Molotov cocktail toward the entrance of the hotel.  The Molotov cocktail landed in a bush outside the hotel where an employee was able to put out the fire and recover the still intact Molotov cocktail.

13. Law enforcement officers canvassed nearby businesses for video surveillance and tracked RODRIGUEZ walking toward a gas station approximately one block away from the hotel after the Molotov was thrown.  Officers found RODRIGUEZ asleep near the gas station, six hours after the Molotov was thrown, wearing clothing that resembled what they had seen on the video surveillance and RODRIGUEZ had the same distinctive gait from the video.

## V. STATEMENT OF PROBABLE CAUSE

14. Based on my review of law enforcement reports and video footage, and from speaking with other law enforcement personnel, I know the following:

    a. On or about June 21, 2025, at approximately 3:50 a.m., Los Angeles Police Department ("LAPD") received a 9-1-1 call reporting that a Molotov cocktail had been thrown at the Westin Hotel located at 5400 W. Century Boulevard in Los Angeles, California, which is within the Central District of California (the "Hotel"). At the time of the incident, several federal law enforcement personnel, working on immigration enforcement were staying at the Hotel.

    b. According to an employee of the Hotel who spoke to LAPD officers, from inside the Hotel, the employee saw an individual throw an object on fire that landed in the bushes in front of the Hotel shortly before 3:50 a.m. The employee walked out to the bushes and saw a ball of fire. The employee could see a glass bottle, partially filled with liquid, with paper inserted into the neck of the bottle, which was on fire. The employee was able to put out the fire by blowing on it several times. He then picked up the glass bottle and brought it to a security officer for the Hotel, who then called 9-1-1.

    c. LAPD officers reviewed video surveillance at the Hotel showing the incident, which I have also reviewed. On the video surveillance, a male individual, approximately 5' 8" or 5' 9" and between 170 and 180 pounds, who walked with a distinctive gait (in the way he is bent slightly forward, with a possible

5

limp and swinging his arms high), and wearing grey hooded sweatshirt, dark pants, black shoes, and a lighter colored hat approached the Hotel from the east (in the direction of the intersection with La Cienega Boulevard). This individual lit an object on fire and threw it towards the Hotel entrance. The object landed in bushes at the front of the driveway of the Hotel and lit the bushes on fire as pictured below:




       d.    LAPD officers went to several nearby businesses to retrieve video surveillance footage and attempt to see the movement before and after throwing the Molotov cocktail.

       e.    On video surveillance, the officers saw an individual that appeared to be the same individual based on clothing and the distinctive gait from the Hotel video surveillance in front of a McDonalds approximately one block away from the Hotel at approximately 3:30 a.m. (20 minutes before the Molotov cocktail was thrown). The officers saw this individual interact with an unknown person.

       f.    The officers also saw an individual that appeared to be the same individual from the Hotel (and McDonalds) video surveillance on the video surveillance of another nearby hotel

walking westbound in an alleyway -- the direction of the Hotel -- at approximately 3:44 a.m.

  g. LAPD officers saw additional video surveillance in which, after crossing Century Boulevard, at approximately 3:49 a.m., an individual that appeared to be the same individual from the Hotel is at the corner of the Hotel compound, where there is The Daily Grill.  On the video, there is then a bright flash, which in my opinion is consistent with someone lighting a flame, where the individual was last visible.  The flame travels in an arc through the air before it lands in the bushes.

  h. At approximately 3:49 a.m., video surveillance from the Hotel shows the above-described individual run across Century Boulevard and back in the direction the individual had approached from minutes earlier.  On the video, the individual then starts walking and continues to walk the same path they had approached from.

  i. Video surveillance from the same McDonalds (pictured below) shows the individual who threw the Molotov walking back through the same alleyway and towards the direction of an Arco gas station at the corner of La Cienega Boulevard and

//

//

7

W. Century Boulevard at approximately 3:55 a.m. (approximately five minutes after the Molotov cocktail was thrown).

 

      j.   LAPD officers that had been canvassing for video surveillance of the individual who threw the Molotov went to the above-described Arco gas station. At approximately 10:05 a.m. -- approximately six hours after the Molotov cocktail had been thrown -- the officers saw an individual that matched the description of the person who threw the Molotov who was sleeping on the sidewalk in from of a bus bench. This individual, who the officers later identified as RODRIGUEZ, was wearing a grey hooded sweatshirt, dark blue jeans, and black shoes. A light grey hat was near him on the bench. RODRIGUEZ's clothing appeared to be similar to the individual seen on video

//

//

8

surveillance throwing the Molotov cocktail at the Hotel, as pictured below:

  

k. RODRIGUEZ is 5'9" and 180 pounds, which is consistent with the physical build of the individual seen on the video surveillance.

l. The LAPD officers woke RODRIGUEZ up and asked him to walk to a nearby wall. When RODRIGUEZ walked to the wall, the LAPD officers believed he walked with the same distinctive gait they had seen on other video surveillance of the individual that threw the Molotov cocktail. The LAPD officers advised RODRIGUEZ of his *Miranda* rights and RODRIGUEZ agreed to speak with them. RODRIGUEZ told the officers he had been in the area generally, but RODRIGUEZ denied walking over to the Hotel. After the officers told RODRIGUEZ they were investigating an arson, RODRIGUEZ did not answer any additional questions. RODRIGUEZ was placed under arrest for attempted arson and violating parole.[1]

---

[1] RODRIGUEZ was on parole from a 2024 First-Degree Robbery conviction.

m.  According to Los Angeles Fire Department investigators who went to the Hotel on June 21, 2022, the Molotov Cocktail consisted of a glass bottle, filled with a liquid, and an ignition source, which was paper that was placed into the liquid substance and emerged from the opening of the glass bottle.  The paper material appeared to be burned at the opening of the bottle.  Pictures taken by the investigators are below:

 

n.  On June 24, 2025, LAPD Hazmat tested a sample of the liquid from the Molotov cocktail.  According to the test results, the liquid was a mixture of gasoline and ethanol, both of which I know to be flammable liquids.

o.  Based on my training and experience, I believe the above-described object was a Molotov cocktail because it was a glass (breakable) bottle, with a flammable liquid inside, and an ignition source to ignite the liquid (paper), thereby constituting a destructive device pursuant to 26 U.S.C. § 5845(f).  Based on my training and experience I also know a Molotov cocktail is a hand-thrown explosive or incendiary weapon.

15. On June 24, 2025, an ATF Industry Operations Intelligence Specialist conducted a query in the National Firearms Registration and Transfer Record for RODRIGUEZ based on his name, date of birth, and social security number, which I know from reviewing his criminal history. No results were found, meaning no destructive device has been registered to RODRIGUEZ.

16. I have reviewed RODRIGUEZ's criminal history, which includes over a dozen misdemeanor convictions, five felony convictions, over two dozen bench warrants, and two arrest warrants. Of RODRIGUEZ's felony convictions, he was most recently convicted of First-Degree Robbery in March 2024, in violation of Penal Code Section 211, for which he was sentenced to two years' imprisonment. In July 2023, RODRIGUEZ was convicted of obstructing or resisting, in violation of Penal Code Section 69, before being convicted of Vandalism, in violation of Penal Code Section 594 in both July and September 2023.

//

//

## VI. CONCLUSION

17.   For all the reasons described above, there is probable cause to believe that RODRIGUEZ violated 26 U.S.C. § 5861(d) (Possession of an Unregistered Destructive Device).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 26th day of
June, 2025.

_____
HONORABLE PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE